Thank you, Your Honor. May it please the Court, Anthony Bornstein, on behalf of the Petitioners, Mr.s. Roy and Kephart. Mr. Bornstein. Thank you, Your Honor. Your Honor, in the face of conflicting affidavits and evidence, the District Court erred in denying Petitioners an evidentiary hearing on the issue of equitable tolling. The conflict in this case was not just a matter of credibility, although the conflict over credibility is certainly present. At its heart, and most importantly, the conflict was over the basic facts of the case. What were the impediments faced by Petitioners as they attempted to mount their collateral attacks at the privately run prison in Arizona? You briefed those facts very clearly. Doesn't this case differ from the Wayland Hunt v. Early case in that, in that case, the affidavits were uncontested. And in this case, they were contested. Does that make a difference? Well, the very fact that there was such contested evidence means that the court below should have held an evidentiary hearing at which the parties would cross-examine the witnesses, the most important witnesses, who supplied the affidavits concerning the conditions at the library in Arizona and the so-called research by mail and telephone system that existed between the two facilities. Indeed, the court would have to consider the affidavits as true, would it not, of Petitioners as well as the Respondents? Well, the Respondents would definitely – the court should have considered them as true, but as is evident from the lower court's decision, it rejected the truth of those affidavits. So we see that most prominently in the Albert Roy case, where the court did not supply additional reasons in denying the petitions, but said, here's what Petitioners say. Respondent comes forward with three affidavits that contradict Petitioners' evidence. Therefore, Respondents' evidence carries the day and the petition should be denied. That was the point I was trying to raise. As long as Petitioners raise an issue here, we have to regard for that moment their statements as true. Oh, yes. Yes. All right. I see. I misunderstood that. All right. That's the court's question. But, yes, that is absolutely true. But Petitioner still has the burden to establish diligence, does he not? That's correct, Your Honor. And what is the showing that can be relied upon to determine diligence in this case? The showing is as follows, Your Honor. First of all, in the Roy case, at ER, Volume 2, ER 294, Albert Roy files and recounts in his federal lawsuit, filed in the District of Arizona, a complaint in which he explains the dire circumstances he's confronted with at this privately run facility in Arizona. He writes on page 294 of the excerpt, I am in process of post-conviction and being denied to adequately proceed further. That, I won't quote in more detail from that affidavit, but he characterizes the situation, perhaps dramatically, as a kidnapping and exile and explains that he's trying to mount a collateral attack but is being prevented from the process of litigating state habeas corpus, it's actually state post-conviction, by the deficiencies he's facing in this private facility in Florence, Arizona. So with respect to the Roy case, I'd submit that's a strong showing of diligence. Neither petitioner is able to come forward with dates, times, and places. And I submit to the Court that such a requirement of specificity is not required and is decidedly unfair. Well, wait a minute. Doesn't the petitioner have the burden of proof? Petitioner has the burden of proof to show a certain level of diligence. But the Lott v. Mueller case, I think, is very important here, Your Honor. We cite that case at page 2 of our reply brief. And in Lott, the Court cautioned that in imposing extraordinarily high evidentiary standards on pro se litigants runs against the grain of this Court's en banc decision in Rand v. Rowland. It recognizes that pro se prisoners at the outset face very difficult obstacles in mounting legal cases in the courts because of the inherent obstacles they face by virtue of incarceration, and notes that a confluence of factors can make a showing of diligence. The petitioners in this case did what they could do to establish diligence. Respondent notes that certain records are kept regarding that research-by-telephone-and-mail system, but then says that in the regular course of business, they disposed of these records. So it's — I submit an unreasonably high standard to then require the petitioners, who, it seems, at first shared one typewriter with a number of other — all the other prisoners who sought to use that library in Arizona, later on, at best, had a couple of typewriters to share, to — and no evident copy machines. None of the parties say there was a copy machine in the library there. It's unreasonable to impose on such prisoners an obligation to then have meticulous recordkeeping regarding what they requested of the State authorities in Oregon to send to them. Well, that doesn't stop a petitioner from at least reciting the history of what he tried to do, does it? We could have cited additional efforts, and perhaps there could have been more detail about what efforts were mounted. And I think before that the Court dismissed the petitions outright, could have requested additional information. But we submitted, as best we could, the information that petitioners had filed in sworn documents in response to the order to show cause in the Kephart case, and in the additional information that we supplied by virtue of affidavits. In the — in both cases, we supplied the affidavits of the prisoners' witnesses, who also experienced the conditions at Arizona. And Thomas Jensen and Noe Martinez, who were in prison there, recited Mr. Kephart's efforts to mount his collateral challenge. You're arguing equitable tolling, of course. Is there a case to be made that there was actual timeliness, or do you have to rely on equitable tolling? We've argued that equitable tolling is the basis that the Court would require to find that the petitions were timely. But again, at 1 ER 158 and then 1 ER 167, Mr. Jensen's and Mr. Martinez note that Mr. Kephart was there and that he was trying to get materials but was unable to do so, finding him to be a frustrated inmate. And that evidence is corroborated by the number of cases in which petitioners in Oregon who were shipped to that facility were, in essence, thrown out of court because of untimeliness. All of the petitioners save one who were sent to Oregon and tried to mount federal habeas challenges were dismissed on the basis of the AEDPA statute of limitations. The one, evidently, who did not encounter a dismissal based on the statute of limitations was dismissed, had his petition dismissed in its entirety based on a procedural default. And that, I think, is important in that Respondent has argued that, well, at some point, the AEDPA filing deadline was posted. That's not enough, and that's not simply the deficiency in this particular law library. The deficiency is the failure of the State of Oregon to provide adequate legal materials for these petitioners to access. Counsel, you may want to rest for a moment and save the remaining time for your rebuttal. Thank you, Your Honor. I will do that. All right. We'll hear from the State. May it please the Court, I'm Erin Lageson on behalf of Defendants Zerniak and Lampert. I think this case, these appeals, really present two questions for this Court. And the first is, what is the standard governing the determination of when a district court must hold a hearing? Ms. Lageson, could I ask you to step back from the microphone? Normally, it's the other way around, but for some reason, we have very high sensitive mics here. Of course. There will be an ideal distance. I'm not quite sure what it is, but we'll find it. I was afraid of being too quiet, because sometimes I am. So please tell me to adjust if I need to. All right. I think the real question, two questions. That sounds good. Facing this Court and these appeals, what is the standard governing the determining whether a hearing must be held? And in other words, are there circumstances? And if so, what are they that require the Court to go to a hearing? And then the second question, of course, is whether in these cases, those circumstances are present. And I would say that the correct standard, the correct minimum standard for determining whether a hearing must be held is the one stated in the Torres v. Barnhart case. I believe it was a Fifth Circuit case I cited in the brief. And that standard is that if the evidentiary submissions by the petitioner are believed, then they would be entitled to equitable tolling. In other words, I think the petitioner has a minimum burden to come forward with evidence showing that if that evidence is believed, that the petitioner would be entitled to equitable tolling. Well, let me ask this. I don't want to interrupt your flow, but what about our en banc decision in which it doesn't indicate that we must rule in favor of Roy and Kemphart because in both cases, there were allegations of the absence of input in the library? No. I think that Whalum Hunt is actually quite distinguishable and is in a quite different procedural posture than this case. In Whalum Hunt, as I read the case, what had happened was the petitioner had filed the petition, and then the district court had ordered them to show cause, why it should not be dismissed as untimely. And in response to the order to show cause, I think the petitioner said the library was bad. It didn't have HEDPA there. And the district court had, as I understand, Whalum Hunt ruled as a matter of law that a bad library wasn't a type of extraordinary circumstance that could justify equitable tolling. And then on appeal, en banc, this court said, no, there's definitely, the library could be a circumstance. That could justify equitable tolling. But because there wasn't evidentiary development in this case, we can't make a determination one way or the other, and they remanded it to the district court for adequate evidentiary development. And that's one point I wanted to make in refuting Petitioner's reply brief. They suggest that Whalum Hunt held that an evidentiary hearing had to be held in order to resolve the issue of equitable tolling. And what Whalum Hunt said is adequate record development. And that happened here. Both petitioners and respondents had an opportunity to submit evidence in support of the claim of equitable tolling. And so I think that distinguishes this case from Whalum Hunt. Well, they were kept from filing because they were transferred to Arizona. And shouldn't it be an evidentiary hearing to determine what would have happened had they had the information? I don't think so. And here's why. Back to the point as to were there circumstances here that required the district court to hold an evidentiary hearing. And the standard I propose is that the petitioners, in order to get to an evidentiary hearing while the court was creating the documentary record, was required to put forth evidence that would establish that they were entitled to equitable tolling, which means the petitioner was required to put forth evidence establishing both diligence and that there was an extraordinary circumstance impeding their ability to file. And my contention here is on these records, the petitioner did not put forth evidence establishing diligence so that, you know, essentially the petitioners didn't establish a dispute as to diligence. And given their failure of proof on that element of equitable tolling, the district court was not required to hold an evidentiary hearing to further resolve the conditions at the library. And I'll just finish by saying, weren't these pro se prisoners? They were. And don't we have to allow for that? I don't. They were pro se prisoners initially in the state cases. But I don't think that's the question. The question, when they were litigating this case, while initially pro se, they did have counsel appointed at the time that the record was being created. Counsel for petitioners did submit quite a few affidavits. So, yes, even that too. Was counsel appointed by the district court? In this case? Yes. I believe counsel, opposing counsel, but could answer that question. It was appointed by district court in these two cases. All right. I'm sorry. Procedurally, I believe the way that they went was they were initiated pro se. There was show cause orders issued, which the petitioners responded to pro se, at which case counsel was appointed to further litigate this issue of equitable tolling. At what time in this time period was counsel appointed? I believe following the show cause order, but I would ask opposing counsel, who is that counsel, to firm up that detail in rebuttal. And so, no, I don't. I think the evidence of diligence, as Judges Hanlon's questions were pointing out, is precisely the type of evidence that is not unreasonably burdensome to require petitioners to articulate in these types of cases, because it's their own story. All they would need to do is come forward and explain what steps they took while they were incarcerated to try to figure out when the EDCA deadline is and what steps they took to try to make their timely filing. And I don't think that they did that here. So, I've articulated my standard, and my position is that under that standard, neither petitioner was entitled to equitable tolling because they didn't make an adequate showing of diligence. I agree with opposing counsel that the district court treated these two cases in two different ways. If you look at the Kephart decision, I believe Judge Aiken applied this standard. She looked at petitioner's evidence and said, there's no evidence or there's no statements telling me when he went to the library or what books he requested or what his independent efforts were to ascertain the filing deadline. So she couldn't make a filing, a finding as to diligence, although I don't think she used the phrase diligence. And she also looked at petitioner's evidence on the library conditions and crediting Noe Martinez's affidavit. She said that that evidence also, you know, shows that the library had EDCA. Therefore, based on petitioner's evidence, the petitioner has failed to make the case. Let me just tell you what's troubling me about this case. That in both instances of Roy and Kephart, they were transferred to the facility in Arizona immediately once their convictions became final, and then they were transferred back to Oregon immediately after the Edmund statute of limitations period had expired. Do you think this is relevant? I can see why it raises concern. I have to say, when I got these cases, I was stunned that we shipped prisoners out of state. But I don't think it excuses them from articulating what steps they tried to take in order to pursue their federal petition. And so they still, you know, regardless of that fact, they still had an obligation in support of their claim for equitable tolling on which they bear the burden of proof to come forward with evidence explaining what they tried to do. And they didn't do that here. Is there anything in the record about library facilities in the other prison? Pardon me? In which prison? Is there anything in the record with respect to library facilities in the, was it Arizona that they were shipped to? Yes. Is there anything in the record about library facilities there? In the record, we have respondents submitted affidavits from the Oregon State Penitentiary Library talking about what books were available there to the Oregon petitioners. They contest the competency of that evidence. The affidavit does state that he's making it based on personal knowledge and he was in charge of what resources were going to be provided. I want to be sure I'm understood correctly. I'm not talking about the facilities of the Oregon prison. I'm talking about facilities in Arizona. That's what we're talking about. That is, there was no evidence submitted as to what was, what were in the Oregon prisons. The only evidence submitted was as to what was in the facilities. That's why I was suspicious of it. Because, of course, there's lots of evidence about the Arizona prison, but there's no evidence about the Oregon prison. In fact, they were transferred and then transferred back the day after. Right. You just answered the question. There was no evidence that in Oregon they would have been able to find what they needed. Is there? No, but there was no, there's been no assertion that the Oregon prison library is deficient in this case. As I think both parties have understood this case to be about the facilities in Arizona. And Judge Aiken found in her finding with respect to the existence of edva materials in the prison, she was referring to the Arizona prison. She was. All right. Yes. And in the Kephart case, her finding was predicated on petitioner, an affidavit submitted by petitioner, the affidavit of Noe Martinez. The Roy case was different because in that case, the evidence credited was the evidence submitted by respondents. I guess I'd like to make one other point. And petitioners in their reply brief suggested we refuse to rebut a very significant point in their opening brief. And then they said that all prisoners that were sent to Arizona failed to make timely filings. And the problem with that is the opening brief indicates that there have been four cases. And then in my statement of related cases, I identified a fifth in which petitioners who were sent to Arizona have filed petitions and in which petitioners have raised equitable tolling as a defense to their untimely filing. And that's a far cry from showing that all petitioners who were sent to Arizona had this problem. There's no evidence in the record as to the total amount of people who were sent. There are. There were hundreds sent. The evidence in the record establishes at best that five people have had problems filing their federal petitions and five people have litigated this equitable calling issue. Thank you, Counsel. Thank you. Mr. Bornstein, you have some reserve time. Thank you, Your Honor. This Court has addressed the applicability of Whalum Hunt. And I believe that that case is very much on point. And I would turn the Court especially to page 1148 of this Court's decision in deciding that a remand was required for determination of whether there were impediments to timely filing faced by the petitioner in that case. The Court explicitly stated that it did not agree with the district court that there were no circumstances consistent with the prisoner's petition and declaration under which they would have been entitled to a finding of an impediment under 2244. It pointed out specifically that the court there, the district court, never gave the petitioner an opportunity to expand on his declaration, given that there were circumstances consistent with their declarations that would have entitled them to such a finding. That's the case here, Your Honor. There are circumstances consistent with the showing that petitioners did come forward with in the district court that would entitle them to equitable tolling. They documented how they were working on their state post-conviction cases at the time, an absolute prerequisite to bringing the types of collateral challenges in federal court that they were seeking to do. And that information was corroborated by the petitioner's firsthand evidence and disputed by the respondent's affidavits under which the lower court relied. Do you want to say anything about Judge Aiken's findings with respect to the library? Your Honor, with respect to the Roy case, Judge Aiken adopted entirely the magistrate judge's decision, which itself credited entirely. The affidavits of respondent, the corporate counsel for the Corrections Corporation of America, the West publishing representative who said, we update our books in such and such a way in such and such a time, and the librarian of Oregon State Penitentiary who never, ever set foot in that library, who based much of his information, in his own words, on information and belief, a lack of firsthand knowledge that rendered his information incompetent, as we've argued and cited cases to support that proposition. But at best, even if some of his information was in a limited sense firsthand, in terms of the system he created, the system the Department of Corrections created in Oregon, there are serious ambiguities as to how that system operated. He notes, for instance, there are any number of requests that were fulfilled by the Oregon clerks or inmates in response to requests from Arizona prisoners. That's the kind of thing that should have been subject to the crucible of cross-examination. What kind of request? From who? That kind of thing. And that's why in this clash of conflicting evidence, the court should have held a hearing to allow fact development on that, Your Honor. Thank you, Counsel. The case just argued will be submitted for decision.
judges: Browning, D.W. Nelson, O'Scannlain